UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BUNKERS INTERNATIONAL                    CIVIL ACTION
CORPORATION

VERSUS                                   NO: 15-5221

M/V WUCHOW ET AL.                        SECTION: "J"(3)

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment*
**(Rec. Doc. 38)** filed by Plaintiff, Bunkers International
Corporation ("BIC"); an opposition thereto (Rec. Doc. 39) and
supplemental memorandum (Rec. Doc. 64) filed by Defendant, China
Navigation Co. Pte. Ltd. ("China Navigation"); an opposition
thereto (Rec. Doc. 42) and supplemental memorandum (Rec. Doc. 57)
filed by Third-Party Defendant, Petroleo Brasileiro S.A.
("Petrobras"); and a reply (Rec. Doc. 53) filed by BIC. Having
considered the motion and legal memoranda, the record, and the
applicable law, the Court finds that the motion should be **DENIED**,
without prejudice, for the reasons set forth below.

## FACTS AND PROCEDURAL BACKGROUND

This case involves multiple, competing claims to payment for
marine "bunker" fuel provided to the M/V *WUCHOW*, a vessel owned
and operated by China Navigation. In July 2015, China Navigation
arranged with BIC to have approximately 450 metric tons of bunker

fuel delivered to the vessel at Parangua, Brazil. BIC then arranged with Petrobras to supply the bunkers to the vessel.

On August 3, 2015, Petrobras delivered the bunkers to the vessel. The chief engineer of the vessel accepted delivery of the bunkers by signing and affixing the vessel's seal on a bunker delivery note provided by Petrobras. On the following day, Petrobras issued an invoice to BIC in the amount of $137,278.07 for the bunkers delivered to the vessel. In turn, BIC issued an invoice to China Navigation for $139,078.43 for the same bunkers, presumably including a markup for its role in the transaction.

After China Navigation received the invoice, but before the invoice became due, BIC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Florida. *See In re Bunkers Int'l Corp.*, No. 15-7397 (Bankr. M.D. Fla. filed Aug. 28, 2015). Subsequently, China Navigation was informed that BIC never paid Petrobras for delivery of the bunkers to the vessel. As a result, China Navigation did not pay BIC.

Litigation began on October 16, 2015, when BIC filed a verified complaint against China Navigation *in personam* and against the M/V *WUCHOW in rem*, seeking to recover the amount claimed due for providing bunkers to the vessel. (Rec. Doc. 1.) BIC alleges that China Navigation breached its obligations under a maritime contract with BIC by failing to pay BIC for the bunkers. Because China Navigation could not been found within the district,

2

BIC sought attachment of the M/V *WUCHOW* while it was located within the district pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Aside from the Rule B attachment, BIC also sought arrest of the M/V *WUCHOW* pursuant to Rule C, asserting a maritime lien against the vessel protecting its right to payment for the bunkers provided. Soon after, BIC and China Navigation reached an agreement whereby China Navigation deposited $200,000 into the registry of the Court to serve as substitute security for the vessel pursuant to Rule E(5)(a). (Rec. Doc. 11.)

On November 13, 2015, making a restricted appearance as owner and claimant of the M/V *WUCHOW* pursuant to Rule E(8), China Navigation filed a counterclaim against BIC and third-party complaint against Petrobras under the federal interpleader statute. (Rec. Doc. 25.) China Navigation acknowledges that it owes payment for the bunkers it received, but it does not want to pay for the same bunkers twice. Accordingly, China Navigation asks the Court to determine whether BIC or Petrobras is the proper party to whom payment should be made. On January 18, 2016, Petrobras filed an answer to the third-party complaint, a counterclaim against China Navigation, and a crossclaim against BIC, claiming entitlement to payment for the bunkers based on its contract with BIC and a maritime lien against the vessel. (Rec. Doc. 35.) In

3

short, multiple parties assert claims to payment by China Navigation for the bunkers.

BIC filed the instant *Motion for Partial Summary Judgment* **(Rec. Doc. 38)** on January 21, 2016. China Navigation and Petrobras filed oppositions on February 1 and February 3, respectively, to which BIC filed a reply on February 17, 2016. In addition, China Navigation and Petrobras filed supplemental memoranda to supplement their oppositions to BIC's motion.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury

could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

The issues central to this case overlap significantly with multiple cases pending in federal courts across the country. In particular, the bankruptcy of O.W. Bunker & Trading A/S, one of the world's largest suppliers of shipping fuel, has caused a "litigation frenzy," in which at least twenty-five interpleader actions are currently pending in the Southern District of New York. *See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, No. 15-97, 2016 WL 731776, at *1 (2d Cir. Feb. 24, 2016), *aff'g UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*, No. 14-9262, 2015 WL 4005527 (S.D.N.Y. July 1, 2015). In each of these actions, the entities that physically delivered the fuel to the vessels, like Petrobras, are seeking to collect payment based on maritime liens, while the bankrupt entities, like BIC, assert claims to payment based on competing maritime liens as well as maritime contracts. *See id.*

In the instant motion, BIC seeks partial summary judgment on its claim against China Navigation for breach of contract. BIC insists that its *in personam* claim against China Navigation is distinct from its *in rem* claim against the vessel, and therefore any argument concerning maritime liens or Petrobras is irrelevant to the instant motion.

BIC's arguments are substantially similar to arguments made in the litigation pending in New York. The Second Circuit recently

6

held that because the *in personam* claims against the vessel interests and the *in rem* claims against the vessels arise out of the same debt, they are "inextricably interrelated," and therefore subject to interpleader. *Hapag-Lloyd*, 2016 WL 731776, at *3 (concluding that "the claims alleged in this action concern the same enrichment to Hapag-Lloyd—*i.e.,* the value of the bunkers, payment for which is the entitlement claimed by all parties—and are thus likewise 'inextricably interrelated.'" (footnote omitted)); *see also UPT Pool*, 2015 WL 4005527, at *6 ("[B]ecause there is only one underlying debt, any interpleaded *in personam* claims against the Vessel Interests are merely alternative procedural devices to obtain the same relief as would be obtained by arresting the Vessel.").[1]

Thus, the Second Circuit concluded that both the *in personam* claims based on maritime contracts and the *in rem* claims based on maritime liens were subject to interpleader. "It is well established that the interpleader statute is 'remedial and to be liberally construed,' particularly to prevent races to judgment and the unfairness of multiple and potentially conflicting obligations. *Hapag-Lloyd*, 2016 WL 731776, at *3 (quoting *State*

---

[1] Indeed, BIC's purported maritime lien would be extinguished if BIC received payment from China Navigation pursuant to its invoice. *See Hapag-Lloyd*, 2016 WL 731776, at *3 n.17; *World Fuel Servs., Inc. v. Magdalena Green M/V*, 464 F. App'x 339, 341 (5th Cir. 2012) ("Where, as here, the debt is repaid and satisfaction is acknowledged, the lien ceases to exist."). In such a case, BIC could not recover both through a contract with China Navigation and through a lien on the vessel, thereby further demonstrating the relationship between the purported maritime liens and the interlocking contracts.

7

*Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)). As the Fifth Circuit has explained, an interpleader action typically involves two stages. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). "In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* In the second stage, if the district court finds that the interpleader action has been properly brought, "the district court will then make a determination of the respective rights of the claimants." *Id.*

By filing the instant motion for partial summary judgment, BIC has essentially asked the Court to bypass the first stage of the interpleader action and decide the merits of its claim under stage two. Although admittedly, on its face, this action appears to present a classic textbook example of interpleader, *see Hapag-Lloyd*, 2016 WL 731776, at *3, a decision has not been rendered on the stage-one issue. For this reason, BIC's motion for summary judgment is premature at this time. *See Progressive Am. Ins. Co. v. Thorn*, No. 06-717, 2007 WL 1381576, at *3 (M.D. Ala. May 8, 2007) (denying motion for summary judgment as premature because stage one of the interpleader claim had not yet come before the court by motion or otherwise).[2]

---

[2] China Navigation requests that the Court award it legal fees and costs associated with opposing BIC's motion. The award of attorney's fees in an interpleader action is in the discretion of the district court, and fees are

Additionally, in its opposition, Petrobras asks the Court to defer ruling on the motion to allow time for Petrobras to conduct discovery. A district court may deny or defer considering a motion for summary judgment if the nonmovant files an affidavit showing that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *accord Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006). Rule 56(d) motions for additional discovery are "'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

This case is in its infancy. No discovery has occurred and disclosures have not been exchanged. In accordance with Rule 56(d), Petrobras attached an affidavit setting forth several issues on which it wishes to conduct discovery, including the agency relationship between the parties, China Navigation's knowledge regarding which party would provide the vessel with bunkers, and the authority of the parties ordering bunkers to bind the vessel. These issues are relevant to the contractual relationships between

---

available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants. *Rhoades*, 196 F.3d at 603. For the same reasons that BIC's motion for summary judgment is premature, the Court finds that China Navigation's request for attorney's fees is premature.

China Navigation, BIC, and Petrobras, and the related claims to a maritime lien. Accordingly, here, as in other civil cases, the filing of a summary judgment motion in advance of any discovery is premature.

It is worth noting that this is the second time BIC has filed a motion for summary judgment in the case. The first motion, which was filed less than two weeks after BIC filed suit, was denied as premature. (Rec. Doc. 32.) The Court instructed BIC to refile its motion "at a more appropriate time, after all parties have had an opportunity to file responsive pleadings." *Id.* at 3. Although all parties have had an opportunity to file responsive pleadings—BIC filed its second motion three days after Petrobras filed its answer—the Court finds that BIC's motion is again premature, for the reasons discussed above.

The Court concludes that summary judgment is premature as the litigation of this matter is still in its infant stages. This action presents, as the Southern District of New York aptly put it, "interesting and apparently novel questions regarding the interplay among the United States bankruptcy law, maritime law and the federal interpleader statutes." *UPT Pool*, 2015 WL 4005527, at *1. Because the various relationships in this case may, for example, require the Court to "untangle complicated questions of subrogation and set-offs among the parties as it determines payment obligations," *Hapag-Lloyd*, 2016 WL 731776, at *3 n.18, this Court

10

has serious doubts as to the wisdom of granting summary judgment before, at the very least, full and fair discovery.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Partial Summary Judgment* **(Rec. Doc. 38)** is **DENIED without prejudice** to being refiled, if deemed appropriate, at a later stage of these proceedings.

New Orleans, Louisiana, this 23rd day of March, 2016.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE