```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


BUNKERS INTERNATIONAL                    CIVIL ACTION
CORPORATION

VERSUS                                   NO: 15-5221

M/V WUCHOW ET AL.                        SECTION: "J"(3)
```

## ORDER & REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 45)** filed by Cross-Defendant, Bunkers International Corporation ("BIC"), and an opposition thereto (Rec. Doc. 50) filed by Cross-Plaintiff, Petroleo Brasileiro S.A. ("Petrobras"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This case involves multiple, competing claims to payment for marine "bunker" fuel provided to the M/V *WUCHOW*, a vessel owned and operated by China Navigation. In July 2015, China Navigation arranged with BIC to have approximately 450 metric tons of bunker fuel delivered to the vessel at Parangua, Brazil. BIC then arranged with Petrobras to supply the bunkers to the vessel.

On August 3, 2015, Petrobras delivered the bunkers to the vessel. The chief engineer of the vessel accepted delivery of the bunkers by signing and affixing the vessel's seal on a bunker delivery note provided by Petrobras. On the following day,

Petrobras issued an invoice to BIC in the amount of $137,278.07 for the bunkers delivered to the vessel. In turn, BIC issued an invoice to China Navigation for $139,078.43 for the same bunkers, presumably including a markup for its role in the transaction.

After China Navigation received the invoice, but before the invoice became due, BIC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Florida. *See In re Bunkers Int'l Corp.*, No. 15-7397 (Bankr. M.D. Fla. filed Aug. 28, 2015). Subsequently, China Navigation was informed that BIC never paid Petrobras for delivery of the bunkers to the vessel. As a result, China Navigation did not pay BIC.

Litigation began on October 16, 2015, when BIC filed a verified complaint against China Navigation *in personam* and against the M/V *WUCHOW in rem*, seeking to recover the amount claimed due for providing bunkers to the vessel. (Rec. Doc. 1.) BIC alleges that China Navigation breached its obligations under a maritime contract with BIC by failing to pay BIC for the bunkers. Because China Navigation could not been found within the district, BIC sought attachment of the M/V *WUCHOW* while it was located within the district pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Aside from the Rule B attachment, BIC also sought arrest of the M/V *WUCHOW* pursuant to Rule C, asserting a maritime lien against the vessel protecting its right to payment for the bunkers provided.

Soon after, BIC and China Navigation reached an agreement whereby China Navigation deposited $200,000 into the registry of the Court to serve as substitute security for the vessel pursuant to Rule E(5)(a). (Rec. Doc. 11.)

On November 13, 2015, making a restricted appearance as owner and claimant of the M/V *WUCHOW* pursuant to Rule E(8), China Navigation filed a counterclaim against BIC and third-party complaint against Petrobras under the federal interpleader statute, asking the Court to determine whether BIC or Petrobras is the proper party to whom payment should be made. (Rec. Doc. 25.) On January 18, 2016, Petrobras filed an answer to the third-party complaint, a counterclaim against China Navigation, and a crossclaim against BIC. (Rec. Doc. 35.) Petrobras asserts claims to payment for the bunkers based on a maritime lien against the vessel and for BIC's alleged breach of contract. *Id.* at 5-7.

BIC filed the instant *Motion to Dismiss* **(Rec. Doc. 45)** on February 9, 2016. Petrobras opposed the motion on February 16, 2016. The motion is now before the Court on the briefs.

## PARTIES' ARGUMENTS

BIC moves to dismiss the crossclaim of Petrobras. In support of invoking Rule 12(b)(6) as a ground for dismissal, BIC contends that Petrobras's crossclaim is a willful violation of the automatic stay of 11 U.S.C. § 362 and is therefore prohibited. (Rec. Doc. 45-1.) BIC insists that any claim against BIC for alleged

3

nonpayment of the Petrobras invoice arose before the commencement of BIC's bankruptcy case. *Id.* at 3. Further, BIC argues that Petrobras's violation of the automatic stay was willful because Petrobras had actual knowledge of BIC's bankruptcy before it filed the crossclaim against BIC. *Id.* Accordingly, in addition to dismissal with prejudice, BIC requests that the Court award it damages, including costs and attorney's fees. *Id.* at 5.

In response, Petrobras contends that its crossclaim did not arise prepetition and therefore does not violate the automatic stay. (Rec. Doc. 50, at 4.) According to Petrobras, BIC did not inform Petrobras that it would refuse to pay Petrobras until October 13, 2015. *Id.* For this reason, Petrobras argues that October 13 is the date of the breach of contract, which occurred after the bankruptcy filing. *Id.* Further, Petrobras argues that BIC cannot establish that Petrobras knowingly and willfully violated the automatic stay. *Id.* For purposes of the instant 12(b)(6) motion, Petrobras asks the Court to disregard the documents relied on by BIC. *Id.* at 3. Lastly, Petrobras argues that this Court lacks subject matter jurisdiction to adjudicate an automatic stay violation and asks, alternatively, that this matter be transferred to the bankruptcy court. *Id.* at 9-11.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the

4

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions

5

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

Generally, when a party declares Chapter 11 bankruptcy, an automatic stay is imposed on any other pending or future actions against the party. *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012) (citing 11 U.S.C. § 362(a)). "The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." *Id.* (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Id.*

The automatic stay prohibits a claimant from attempting to collect prepetition claims from a debtor under the protection of a bankruptcy court. The filing of a bankruptcy petition operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy proceeding], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy proceeding]." 11 U.S.C. § 362(a)(1).

"The stay prohibits the collection of any pre-petition debt but does not apply to claims that arise post-petition." *Campbell*

*v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* (quoting 11 U.S.C. § 101(5)(a)). The concept of a claim is broad, and it includes "all legal obligations of the debtor, no matter how remote or contingent . . . [that will] be dealt with in the bankruptcy case." *In re Egleston*, 448 F.3d 803, 812 (5th Cir. 2006). The "touchstone of any 'claim' is that there is an 'enforceable obligation' of the debtor or an enforceable 'right to payment' from the debtor." *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 524 (5th Cir. 2004). "Whether a debt arises prepetition is governed by when the debt accrued, not when the action for recovery was brought." *In re Luongo*, 259 F.3d 323, 334 (5th Cir. 2001).

Some courts have concluded that actions that violate the automatic stay are void and incurable; however, the Fifth Circuit holds that violative actions are merely voidable and capable of discretionary cure.[1] *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178-80 (5th Cir. 1989) (explaining that the filing of a complaint in violation of the automatic stay was a voidable action and that

---

[1] "This position rests on the bankruptcy court's statutory power to annul the automatic stay, i.e., to 'lift the automatic stay retroactively and thereby validate actions which otherwise would be void.'" *In re Coho Res., Inc.*, 345 F.3d 338, 344 (5th Cir. 2003) (footnote omitted) (quoting *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997)).

7

the bankruptcy court had the option to validate it). Furthermore, the automatic stay does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding. *Arnold v. Garlock Inc.*, 288 F.3d 234, 236 (5th Cir. 2002). District courts retain jurisdiction to determine the applicability of the stay to litigation pending before them, and to enter orders consistent with the terms of the stay. *Id.*

In the instant case, Petrobras's crossclaim against BIC seeks to recover payment due under an alleged sales agreement between Petrobras and BIC. Petrobras alleges that, as a result of correspondence between representatives of BIC and Petrobras on July 27, 2015, a bunkers nomination was issued for the sale of bunkers that would be delivered to the M/V *WUCHOW*. (Rec. Doc. 35, at 5-6.) Petrobras delivered the bunkers at issue to the vessel on August 3, 2015. *Id.* at 6. On August 4, 2015, Petrobras issued a commercial invoice in the amount of $137,278.07 for the sale of the bunkers to BIC. *Id.* According to the invoice, a copy of which is attached to Petrobras's crossclaim, the maturity date was August 24, 2015, twenty-one days from the date of delivery. (Rec. Doc. 35-4, at 2.) Thus, it appears Petrobras had a contractual right to proceed against BIC upon its failure to pay the invoice when due on August 24, 2015. Because BIC filed for bankruptcy on August 28, 2015, Petrobras's claim arose prior to the commencement of the bankruptcy proceeding. *See Campbell*, 545 F.3d at 353-54.

8

Accordingly, Petrobras's crossclaim against BIC is voidable. *See Sikes*, 881 F.2d at 178.

Section 362(k) creates a private right of action for a debtor to bring an action against a person who willfully violates the automatic stay to the injury of the debtor. *In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008). "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). There are three elements for a claim under § 362(k): (1) the creditor must have known of the existence of the stay; (2) the creditor's acts must have been intentional; and (3) these acts must have violated the stay. *Repine*, 536 F.3d at 519.

Although § 362(k) gives a debtor the right to bring an action against a person who willfully violates the automatic stay and causes injury, Rule 12(b)(6) is an improper procedural vehicle for asserting a cause of action. The Court will not consider the merits of BIC's purported cause of action for willful violation of the automatic stay on a motion to dismiss brought by BIC pursuant to Rule 12(b)(6).

Moreover, under the applicable procedural standard, the Court finds that BIC has not carried its burden of showing that Petrobras's crossclaim should be dismissed with prejudice for failure to state a claim. A dismissal with prejudice is tantamount

to a judgment on the merits. *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985). However, the automatic stay "does not determine a creditor's claim but merely suspends an action to collect the claim outside the procedural mechanisms of the Bankruptcy Code." *Campbell*, 545 F.3d at 354. While Petrobras's crossclaim against BIC is subject to the automatic stay and therefore voidable unless Petrobras is granted retroactive relief by the bankruptcy court, BIC has failed to provide any authority to support dismissal with prejudice at this juncture.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that BIC's *Motion to Dismiss* **(Rec. Doc. 45)** is **DENIED**.

New Orleans, Louisiana, this 23rd day of March, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE